# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JESSICA BARKER, | ) |
| Plaintiff | ) ) ) |
| v. | ) No. 2:13-cv-151-GZS ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| Defendant | ) ) |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable, beginning on December 10, 2009, the date that he determined her disability ended, of performing past relevant work as a nurse's assistant.[2] The plaintiff seeks reversal and remand on the bases that the administrative law judge erred in (i) declining to admit, post-hearing, a supplemental opinion of treating cardiologist Andrew C. Corsello, M.D. (the "Corsello Supplement"), (ii) failing to identify vasovagal syncope, post-Internal Cardiac Defibrillator ("ICD") implant, and syncope due to orthostatic hypotension, post-ICD implant, as severe impairments beginning on December 10, 2009, and (iii) failing to give controlling weight to Dr. Corsello's opinion as to her residual functional capacity ("RFC") beginning on December 10,

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), as amended January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 14, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] During her May 3, 2012, hearing, the plaintiff withdrew an application for disabled adult children's benefits. *See* Record at 46.

1

2009. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 15) at 8-17. I recommend that the court vacate the decision of the commissioner and remand he case for further proceedings consistent herewith.

The plaintiff separately moves to admit new evidence, including the Corsello Supplement. *See* Plaintiff's Motion To Admit New Evidence and Supporting Memorandum ("Motion To Admit Evidence") (ECF No. 17). The commissioner appropriately construes this, to the extent it concerns the Corsello Supplement, as a motion for remand based on material mistake of the Appeals Council, and, to the extent it concerns other evidence, as a motion for a sentence six remand based on evidence submitted for the first time to the court. *See* Defendant's Opposition to Plaintiff's Motion To Admit New Evidence (ECF No. 18) at 2-5. The plaintiff's key contention, as her counsel made clear at oral argument, is that the Corsello Supplement should have been admitted into evidence. I agree, and recommend that the court find on that basis that reversal and remand are warranted. I need not, and do not, reach her two additional points of error or her Motion To Admit Evidence, which would be rendered moot if the court agrees with my recommended disposition.[3]

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2007, Finding 1, Record at 19; that, from September 29, 2007, through December 9, 2009, she had a severe impairment of Long QT syndrome status-post ICD implantation, as well as nonsevere impairments of situational

---

[3] Should the court agree that reversal and remand are warranted based on the administrative law judge's failure to admit the Corsello Supplement, it is appropriate to leave to the discretion of the commissioner in the first instance whether to admit on remand some or all of the evidence, apart from the Corsello Supplement, that was proffered through the Motion To Admit Evidence.

anxiety/depression, abnormal kidney findings, and vertigo, Finding 3, *id*.;[4] that, from September 29, 2007, through December 9, 2009, her Long QT syndrome met the criteria of Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings") § 4.05, Finding 4, *id*. at 23; that she was under a disability, as defined by the Social Security Act, from September 29, 2007, through December 9, 2009, Finding 5, *id*. at 25; that, beginning on December 10, 2009, she had a severe impairment of Long QT syndrome status-post ICD implantation, with a nonsevere impairment of vertigo, Finding 6, *id*.; that medical improvement occurred as of December 10, 2009, related to her ability to work because she no longer had an impairment or combination of impairments meeting or medically equaling the Listings, Findings 8-9, *id*.; that, beginning on December 10, 2009, she had the RFC to perform a full range of work at all exertional levels but had nonexertional limitations consisting of a need to avoid exposure to hazards in the workplace such as unprotected heights, operation of dangerous moving machinery or vehicles, and exposure to electromagnetic fields, Finding 10, *id*. at 25-26; that, beginning on December 10, 2009, she was capable of performing past relevant work as a nurse's assistant, which did not require the performance of work-related activities precluded by her RFC, Finding 11, *id*. at 32-33; and that her disability ended on December 10, 2009, Finding 12, *id*. at 33. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v.*

---

[4] The administrative law judge mistakenly described the plaintiff's Long QT syndrome for the period through December 9, 2009, as status-post ICD implantation. The ICD was implanted on December 9, 2009. *See* Record at 513. Nothing turns on the error.

3

*Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); SSR 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

The plaintiff began treating with Dr. Corsello for Long QT syndrome with syncope (loss of consciousness) on January 9, 2006. *See* Record at 637. Dr. Corsello noted that she had "two variants of syncope[,]" one "during blood draws and after nausea which would be classic vasovagal triggers[,]" and the other "after startling[,] which would be classic syncope from long Q-T syndrome." *Id*. at 638-39. On December 9, 2009, he performed an ICD implant. *See id*. at 513. He noted at the time of her hospital admission for the procedure:

> [The plaintiff] has repeated syncope and has a lifelong diagnosis of long QT. She has had syncope as a child on beta-blockers and is now having syncope while pregnant despite beta blockade. Although there was a differential diagnosis for the cause of this syncope, I am very concerned that these represent torsades from her long QT. I told her that according to the current literature that a defibrillator would be recommended for syncope despite beta-blockers. I have recommended defibrillator to the [plaintiff] repeatedly in the past and she has always declined. At this point, she is scared about her unborn child and her child at home and is willing to undergo ICD placement.

*Id*. at 516.[5]

After the ICD implantation, the plaintiff continued to report episodes of syncope. *See id*. at 602 ("ongoing syncopal episodes[,]" April 20, 2010), 607 ("still repeat syncope[,]" March 3, 2010), 608 ("fainted again[,]" February 22, 2010), 609 ("continues to experience syncope[,]" February 9, 2010), 612 ("states today that she did have a recurrent syncopal episode[,]" December 17, 2009), 1059 ("incidentally mentions that she had a syncopal event about two weeks ago[,]" November 7, 2011), 1064 ("syncope has been better controlled" since last visit, with only three episodes, "[a]t least one of [which] occurred while she was working at Dunkin' Donuts and they asked her not to come back[,]" February 15, 2011).

Dr. Corsello submitted an RFC opinion dated April 3, 2012, in which he identified the medical conditions that he was treating as "Long QT [with] syncope [status-post] ICD" and "Reported syncope [with] ICD possibly vagal." *Id*. at 1119.[6] He stated, *inter alia*, that the plaintiff "probably could not maintain regular attendance and be punctual within customary and usually strict tolerances" due to syncope with an unpredictable frequency. *Id*. at 1120. Asked whether the plaintiff's functional limitations had likely persisted since August 18, 2007, the day before her 22nd birthday, he checked the box, "Yes," and wrote, "worse now." *Id*. at 1123.

The record also contained an RFC opinion of agency nonexamining consultant Donald Trumbull, M.D., dated March 29, 2010, in which Dr. Trumbull found that the plaintiff had established no restrictions for any relevant time period except for a need to avoid even moderate exposure to hazards, specifically, unprotected heights and operation of dangerous moving

---

[5] Medical expert William Hall, M.D., testified at the plaintiff's hearing that Long QT syndrome "is an elect[r]ocardiographic marker often associated with frequent fainting" and that the ICD was "placed as a measure of preventing recurring syncope because of serious disturbances in heart rhythm." Record at 74.

[6] It is not clear whether Dr. Corsello handwrote the word "Reported," as the commissioner believes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 16) at 9, or "Repeated," as the plaintiff believes, *see* Statement of Errors at 2. For purposes of this appeal, I will assume that he wrote "Reported."

machinery/vehicles. *See id*. at 593-600. Dr. Trumbull commented that the medical evidence of record supported some limitations due to the possibility of syncope, although the implant should prevent further episodes. *See id*. at 598.

At the plaintiff's hearing on May 3, 2012, Dr. Hall testified that, through the time of the ICD implant, the plaintiff's cardiovascular condition met Listing 4.05, *see id*. at 75, but that, following the implant, none of her examinations had indicated an occurrence of cardiac rhythm disturbance, "so the cause for her recurring reports of syncope or near syncope from the date of placement of the defibrillator remains unknown to the present[,]" *id*. at 74. He elaborated that there had been (i) no medical record of urgent or emergent care for syncope following the ICD implant and (ii) "no medical evaluation of these symptoms even though common syncope or vasovagal syncope sometimes called vasodepressor syncope has been suspected[,] but there has been no medical evaluation directed towards confirming or excluding that diagnosis." *Id*. at 76.

He testified that "because of [the plaintiff's] continued reports of syncope[,]" he believed that Dr. Trumbull's limitations were "appropriate, that is[,] [the plaintiff] must avoid hazardous activities or circumstances, unprotected heights, moving machinery or dangerous machinery or operation of a motor vehicle." *Id*. at 77. He stated that he did not agree with the Corsello RFC opinion, was not able to find recent medical records from Dr. Corsello, and did not understand how his conclusions were drawn. *See id*. at 78.

On cross-examination, Dr. Hall agreed that nothing in the records indicated that Dr. Corsello did not believe the plaintiff when she said she had syncope. *See id*. at 80. He added that there was no doubt in his own mind that she was credible. *See id*. He explained: "Clearly, if she had one of those episodes [syncope] it would interrupt a work day or work period[,] but I think it's important to say . . . that there is no question in anybody's mind, in any physician's

6

mind that [her] reported syncopal and near syncopal episodes . . . are not related to the Long QT syndrome." *Id*. at 82. That was so, he noted, because there was no record of the plaintiff's ICD ever having been triggered after it was placed. *See id*. at 83.

The plaintiff then testified that Dr. Corsello had implied to her that her ongoing syncope was related, more than 50 percent of the time, to her Long QT syndrome. *See id*. at 85. Dr. Hall stated that this did not change his opinion regarding her RFC post-ICD implant because what the plaintiff had told him, which was "very important[,]" was "not reflected in the medical literature [or] the clinical records available for [his] review." *Id*. at 87. Asked by the plaintiff's counsel if part of the reason that he did not change his opinion was because the plaintiff's testimony regarding the attribution of the syncope to Long QT syndrome was not adequately supported by the record, Dr. Hall replied, "That's correct. You know, what might be hopeful [sic] is if we can find, if Dr. Corsello is willing to put his advice or his statement to [the plaintiff] in writing and supply that for the record." *Id*.

The plaintiff's counsel seized the opportunity to request permission to submit an interrogatory to Dr. Corsello on that point. *See id*. at 87-88. The administrative law judge agreed to hold the record open for an additional seven business days to receive that evidence, framing the issue as follows: "Dr. Hall does not believe that the record adequately supports that the reported episode[s] of syncope are related to the cardiac condition [as that] is not reflected in Dr. Corsello's records." *Id*. at 88.

The plaintiff's counsel submitted a letter to the administrative law judge dated May 14, 2012 (mistakenly referred to as 2011), stating that he had sent Dr. Corsello a set of questions on May 4, 2012, the day after the hearing, had been advised that Dr. Corsello had been out of the office but had returned on May 10, and would do his best to obtain answers to the questions so

that he could submit them by May 17, the end of the "10 business day deadline[.]" *Id*. at 402. At oral argument, the plaintiff's counsel conceded that he had miscalculated the deadline, which expired after seven business days, on May 14.

The plaintiff's counsel followed up with an undated letter to the administrative law judge, *see id*. at 403-04, which the plaintiff represents in her statement of errors was sent on May 16, *see* Statement of Errors at 4. In that letter, the plaintiff's counsel sought an extension of the (miscalculated) deadline to May 21, explaining that he and his client had been calling Dr. Corsello's office almost every business day since May 10 requesting answers to the supplemental questions, and that he had been informed by an assistant that Dr. Corsello was in the hospital performing procedures that day and the rest of the week and would not return to the office until May 21. *See* Record at 403. The plaintiff's counsel sent a third letter to the administrative law judge dated May 17, 2012, in which he stated that he had received and submitted the Corsello Supplement the prior day, within the 10-day business period. *See id*. at 405.

In the Corsello Supplement, Dr. Corsello indicated that (i) the plaintiff had "continued [to] experience a significant number of syncopal episodes" following the ICD implant, (ii) none of those episodes had been due to Long QT syndrome, (iii) some of the episodes had been due to orthostatic hypotension, (iv) the likely cause of her other syncopal episodes since December 9, 2009, was vagal syncope, and (v) in his opinion, the plaintiff's syncopal episodes prevented her from being able to consistently sustain an eight-hour workday and 40-hour workweek. *See* Corsello Supplement (ECF No. 15-1), attached to Statement of Errors.

In his May 24, 2012, decision, the administrative law judge declined to admit the Corsello Supplement, stating:

> At the [plaintiff's] request, the undersigned gave the [plaintiff] seven (7) business days after the date of the hearing to submit additional evidence. The [plaintiff] did not submit additional evidence within the seven business days after the hearing. The record was closed and a decision was made. After the seven-business-day deadline, the [plaintiff] submitted additional written evidence for consideration. It appears from the correspondence from the [plaintiff's] representative that he was under the mistaken impression that he had ten business days from the date of the hearing to submit additional evidence. The undersigned . . . declines to admit this evidence because the requirements of 20 CFR 405.331(c) are not met. [That subsection] presents a two-staged test for allowing evidence to be admitted after the date of the hearing. The claimant must show "that there is a reasonable possibility that the evidence, alone or when considered with the other evidence of record, would affect the outcome of the claim" AND that one of the other circumstance[s] allowed by 20 CFR 405.33[1](c)(1, 2, or 3) is present. The undersigned finds that neither stage of this test is met.
>
> There is sufficient evidence already of record for the undersigned to make a decision; and, further, there is not a reasonable possibility that the new evidence would lead to a different outcome of the decision. Also, there is no reason that this evidence could not have been submitted before the five business days prior to the hearing. The undersigned granted the seven-day extension as an accommodation for the benefit of the [plaintiff]. She has been represented by an attorney in this matter since May 6, 2010. If there was evidence the [plaintiff] believed was important to her case, it could have been submitted within the extended time limit, if not earlier. The [plaintiff] has not proven a basis, allowed by the regulation, to find good cause for the late submission of evidence.

Record at 15 (emphasis in original).

With respect to the period after December 9, 2009, the administrative law judge found that the evidence of record supported Dr. Hall's opinion, reasoning:

> After the implantation of the ICD, there were "reported" episodes of syncope, none of which could be linked to a cardiac event. The device itself allowed monitoring for heart irregularities, and it has recorded none. It has not activated a shock to abort a critical arrhythmia, such as ventricular tachycardia or ventricular fibrillation. . . . Even Dr. Corsello, in his opinion statement of April 3, 2012, referred to "reported" episodes of syncope.
>
> Dr. Hall's testimony is further confirmed on the point that she has not sought emergent care for a syncopal event after the ICD placement. He recognized that other possible causes of her subjective symptoms had been proposed by examining and treating physicians. However, he also noted that these physicians had not made extensive efforts to establish another medical cause of her symptoms.

9

*Id*. at 30.

The administrative law judge gave Dr. Corsello's RFC opinion for the period after December 9, 2009, no weight, stating that Dr. Corsello "did not explain [the] conflict between the [plaintiff's] reported symptoms and the lack of evidence of cardiac events correlating to the symptoms[,]" "neither his own records [n]or the medical evidence in general show even subjective symptoms of the frequency or severity that would explain the degree of limitations expressed[,]" and even Dr. Corsello referred to the symptoms of syncope post-ICD as "reported[.]" *Id*. at 31.

The plaintiff does not dispute that she missed the post-hearing deadline to submit the Corsello Supplement and that, accordingly, its admission was subject to the requirements of 20 C.F.R. § 405.331(c). That regulation provides, in relevant part:

> If [a claimant] . . . wish[es] to submit evidence after the hearing and before the hearing decision is issued, the administrative law judge will accept the evidence if [the claimant] show[s] that there is a reasonable possibility that the evidence, alone or when considered with the other evidence of record, would affect the outcome of [his or her] claim, and:
>
> (1) [The commissioner's] action misled [the claimant];
>
> (2) [The claimant] had a physical, mental, educational, or linguistic limitation(s) that prevented [him or her] from submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control prevented [him or her] from submitting the evidence earlier.

20 C.F.R. § 405.331(c).

The plaintiff argues that she made the required two-step showing, as a result of which it was error not to admit the Corsello Supplement. *See* Statement of Errors at 10. At the first step, she contends that there was "a reasonable possibility" that the evidence would have affected the outcome of her claim, given Dr. Corsello's clarification of the etiology of the syncopal episodes

10

post-ICD implant. *See id*. at 10-11. At oral argument, her counsel took the position – and the commissioner's counsel did not dispute – that, in the Corsello Supplement, Dr. Corsello for the first time offered a definitive diagnosis of the post-ICD implant episodes, unequivocally stating that they were not due to Long QT syndrome, but rather to a combination of orthostatic hypotension and vagal syncope.

In response, counsel for the commissioner emphasized that Dr. Hall had stated only that it would make a difference if Dr. Corsello attributed the ongoing syncopal episodes to Long QT syndrome. He argued that, because Dr. Corsello did not, nothing in the Corsello Supplement undermined the Hall opinion. *See also* Opposition at 7. Nonetheless, Dr. Hall's testimony as a whole fairly can be read to stand for the proposition that what would have made a difference was a clear etiology for the post-ICD implant syncopal episodes – whether Long QT syndrome or something else. Dr. Hall conceded on cross-examination that, if the plaintiff had a syncopal episode, "it would interrupt a work day or work period[,]" but stated that it was important to point out that the episodes could not have stemmed from Long QT syndrome. Record at 82. His focus on Long QT syndrome was understandable: he had earlier testified that it was the only definitively diagnosed condition of record that could have caused syncopal episodes, *see id*. at 74, 76, and the commissioner has decreed that "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected

to produce the symptoms[,]" Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2013) at 133.[7]

The administrative law judge, in turn, rejected the Corsello RFC opinion in part on the basis that Dr. Corsello had failed to explain the conflict between the plaintiff's reported symptoms and the lack of evidence of *cardiac* events correlating to the symptoms. *See* Record at 31.

The plaintiff need not show a certainty or even a likelihood, but merely a reasonable possibility, that the Corsello Supplement, if admitted, would have affected the outcome of her claim. The administrative law judge did not explain, and it is not otherwise apparent, why he found that the plaintiff did not meet that standard. His finding, thus, is unsupported by substantial evidence.[8]

The plaintiff further argues persuasively that she has shown, for purposes of the second step of the section 405.331(c) analysis, that an "unusual, unexpected, or unavoidable circumstance beyond [her] control prevented [her] from submitting the evidence earlier." 20 C.F.R. § 405.331(c)(3). At hearing, Dr. Hall stated that it might be helpful to obtain a statement from Dr. Corsello as to whether, as the plaintiff testified, Dr. Corsello attributed at least a portion of her post-ICD implant syncopal episodes to Long QT syndrome. *See* Record at 87. The administrative law judge agreed to keep the record open for seven business days for that purpose.

---

[7] I am mindful that Dr. Hall testified that, "because of [the plaintiff's] continued reports of syncope[,]" he felt that Dr. Trumbull's limitations were "appropriate." Record at 77. Standing alone, this suggests that Dr. Hall accounted for the plaintiff's reported syncopal episodes despite concluding that they were not attributable to any medically determinable impairment. However, he later made clear that evidence that those episodes were attributable to Long QT syndrome would affect his RFC opinion. *See id*. at 87. As discussed above, the same logic would apply to any medically determinable impairment capable of causing the plaintiff's syncopal episodes.

[8] As the commissioner notes, *see* Opposition at 12-15, the administrative law judge offered other reasons for discounting the severity of the reported post-ICD implant syncopal episodes, including lack of evidence of their frequency and severity and purported inconsistencies with the plaintiff's activities of daily living, such as her pursuit of a nursing degree and acceptance of a job as a nurse's assistant, *see* Record at 30-31. However, on the totality of the evidence, in particular Dr. Hall's testimony, the Corsello Supplement still suffices to raise a reasonable possibility that the outcome would have been different.

*See id.* at 88. The plaintiff's counsel submitted a set of questions to Dr. Corsello the following day, May 4, 2012, and he and/or the plaintiff checked with Dr. Corsello's office nearly every business day from May 10, 2012, onward. *See id*. at 402-03. Despite those efforts, they were not able to secure a response to the questions until May 16, 2012. *See id*. at 405. The administrative law judge's finding that the plaintiff could have submitted this evidence as of May 14, 2012, the deadline for doing so, or even before the hearing, *see id*. at 15, therefore, is unsupported by substantial evidence.[9]

Reversal and remand, accordingly, are warranted for the purpose of reconsideration, with the benefit of the Corsello Supplement and the testimony of a medical expert, preferably Dr. Hall, whether, for the period commencing on December 10, 2009, the plaintiff remained disabled.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **_VACATED_** and the case **_REMANDED_** for further proceedings consistent herewith. Should the court agree, the Motion To Admit Evidence will be **_MOOTED_**.

### _NOTICE_

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

---

[9] The commissioner contends that the administrative law judge reasonably found that the plaintiff was on notice of the need to clarify the etiology of the ongoing syncopal episodes, given her counsel's concession at hearing that Dr. Corsello's April 2012 opinion was ambiguous as to whether Long QT syndrome was a cause of her syncopal episodes post-ICD implant. *See* Opposition at 9-10. However, the colloquy to which the commissioner points indicates that, until Dr. Hall testified to his understanding of that portion of Dr. Corsello's April 2012 opinion, the plaintiff's counsel construed it as unambiguously attributing the syncopal episodes at least in part to Long QT syndrome, *see* Record at 83-84, which was consistent with his client's understanding, *see id*. at 85-86.

***Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.***

Dated this 28th day of April, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge